UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
GILBERT PARKER,                                  :
                                                 :
                        Plaintiff,       :     04 Civ. 3901 (TPG)
                                                 :
        – against –                             :     **OPINION**
                                                 :
NEW YORK STATE DIVISION OF                       :
PAROLE, et al.,                                  :
                                                 :
                        Defendants.      :
------------------------------------------------x

     Pro se plaintiff Gilbert Parker brings this action under 42 U.S.C. § 1983, alleging that he was wrongfully detained twice on the same parole warrant after the maximum expiration date for his parole supervision.  On August 19, 2011, the court denied Parker's motion for summary judgment.  Parker has now filed four documents which are denominated as motions for summary judgment or motions for default related to the earlier summary judgment motion that the court has already denied.  Defendants Alice Chin and Ronald Friedman have cross-moved for summary judgment.

     All motions are denied.

## FACTS

     The main source of the facts described in this opinion are official records.  Also, the court has made use of certain of the testimony in Parker's deposition.  Defendants Chin and Friedman have not been deposed, nor have they filed any affidavits or declarations in connection

with the motions.  However, the defendants have filed a statement of undisputed facts, which has been used to some extent by the court.

Parker was convicted of third-degree attempted burglary in New York state court and on June 26, 2000 he was sentenced to one year and six months to three years' imprisonment.  He began serving his sentence on July 18, 2000.  He was released to parole supervision on December 5, 2001, and subsequently absconded to Georgia on December 13, 2001.  He was arrested in Georgia, extradited to New York, and following a parole revocation hearing, he was sentenced to four months in prison for absconding to Georgia.

On October 10, 2002, Parker was again released to parole supervision.  At this point, Parker's maximum expiration date, - i.e., the date on which his sentence, and thus his parole supervision, was to end, was April 3, 2003.

Chin was Parker's parole officer.  Friedman was Chin's supervisor.  On January 30, 2003, Chin and Friedman issued parole warrant number 388305.  None of the parties have provided the court with a copy of this warrant.  However, an untitled Division of Parole report apparently prepared by Chin and submitted by Friedman has been filed in connection with these motions.  The report, dated February 6, 2003, recited the following alleged parole violations: he left his approved residence without the permission of his parole officer, was arrested for drinking in public in January 2003, failed to notify his parole officer of

his arrest, failed to make his office reports, and failed to attend his mandated substance abuse program. The report also indicated that Parker's whereabouts were then unknown but that a warrant had been issued on January 30, 2003. Because the Division of Parole did not know Parker's whereabouts, the warrant was not served at that time.

On February 14, 2003, a report entitled "Board Action" was prepared, apparently by the New York State Division of Parole. It declares Parker "delinquent" as of January 2, 2003. January 2, 2003 is apparently the date when Parker allegedly began committing the parole violations described above.

On April 21, 2003, almost three weeks after Parker's April 3, 2003 maximum expiration date on which his parole supervision should have ended, Parker was stopped by a New York City Police Department officer for possessing an open container of beer in a public place.[1] The officer told Parker that if he did not have any outstanding warrants, he would give him a summons for having an open container. The officer then ran Parker's name through the NYPD computer system, which alerted him to the outstanding parole warrant that had been issued by Chin and Friedman. Parker was then detained on the warrant by the NYPD and held at Bronx Central Booking for five days.

---

[1] N.Y Admin. Code § 10-125(b) makes it an offense to possess an open container containing an alcoholic beverage in any public place with intent to consume it.

No one from the New York State Division of Parole executed the warrant, or otherwise took any action with respect to the warrant, while Parker was detained.  On April 25, 2003, Parker was arraigned only on the charge of possessing alcohol in a public place, and the charge was dismissed because Parker had already spent time in jail.  Parker was released.  The parole warrant remained extant.

The complaint alleges that upon his release Parker made numerous attempts to contact Chin and Friedman but was unable to do so.  In his deposition, Parker admitted that he did not attempt to contact Chin between January and April 2003 because he was "on the run" and had absconded from New York, but he maintained that he attempted to contact Chin by phone after his April 2003 arrest.  He did not go to the parole office in person to attempt to report to Chin.  In their statement of undisputed facts, Chin and Friedman claim that Parker never contacted them or otherwise reported to them.

On May 23, 2003, Parker was again stopped by an NYPD officer for possessing an open container of beer in a public place.  Like the officer who arrested Parker in April 2003, this officer stated to Parker that if Parker had no outstanding warrants he would be issued a summons and would be free to leave.  The officer then conducted a name check on the NYPD computer system, which again turned up the same outstanding parole warrant that had been issued by Chin and Friedman.  Parker was

again detained, and this time arraigned on the parole warrant, after which he was held at the Bernard B. Kerik Complex.

On May 29, 2003, six days after he was arrested on the parole warrant, Parker was given a Notice of Violation by the New York State Division of Parole.  Under New York law, the Division of Parole was required to serve this notice on Parker within three days of his arrest.  The Notice of Violation informed Parker that he was being charged with violating the conditions of release to parole supervision and advised him that a preliminary hearing would be held on June 6, 2003 to determine whether probable cause existed for the charged violations.  Assuming the existence of probable cause, a final revocation hearing on the charges was to be held on June 20, 2003.

Neither Chin nor Friedman's name appears on this Notice of Violation, and they have not provided any testimony as to who at the Division of Parole issued the Notice of Violation.  However, as Parker's parole officer and her supervisor, it is reasonable to infer that Chin and Friedman were responsible for issuing the Notice of Violation.

Parker testified during his deposition that the June 6, 2003 probable cause hearing never took place.  Chin and Friedman's papers do not claim that such a hearing ever occurred.  Parker was still in custody on June 17, 2003, more than 11 days after the probable cause hearing was scheduled to take place, when he filed a petition for habeas corpus in Supreme Court, New York County.  The basis for Parker's

habeas corpus petition was that Parker was not, at the time of his arrest, provided with proper notice of a preliminary hearing within three days of the execution of his parole warrant, as required under N.Y. Exec. Law section 259-i.  At the July 1, 2003 hearing on Parker's habeas petition, the Assistant Attorney General stated that the Attorney General's office did not wish to contest Parker's petition and that he should be released. Parker was released on July 7, 2003,[2] and discharged from parole as of his April 3, 2003 maximum release date, retroactively.

     Although Parker does not have documentary evidence of this, he claims that his parole supervision was terminated when he was released on July 7, 2003 and that he was informed of this by the prison guards and an attorney named Jose Vasquez.  He stated that the Attorney General at the habeas proceeding informed him that he was to be released and that the judge agreed his parole supervision should be terminated.  Before he was released, he was also told by the prison guards that he did not have to report to a parole officer anymore.  This is certainly consistent with Chin and Friedman's admission that he was discharged as of April 3, 2003, retroactively.  However, in their papers Chin and Friedman have also taken the conflicting position that Parker's parole was not terminated when he was released on July 3, 2003, but

---

[2] Parker claims to have been released on July 3, 2003.  Chin and Friedman claim that the date was July 7, 2003.  The difference is immaterial for purposes of these motions but for purposes of these motions this opinion will use the later July 7, 2003 date.

rather that it continued thereafter because he had been declared delinquent.

### New York's Statutory Scheme for Punishing Parole Violations

To assess the validity of Parker's constitutional claims, it is worthwhile to summarize New York's elaborate procedures for punishing parole violations. These procedures are generally set forth in N.Y. Exec. Law section 259-i. These procedures have been summarized in the court's prior decision in this matter, see Parker v. Chin, No. 04 Civ. 3901 (TPG), 2006 U.S. Dist. LEXIS 30675, at *7-10 (S.D.N.Y. May 16, 2006), but are worth revisiting here.

If a parole officer has reasonable cause to believe that a parolee has violated one or more conditions of his parole, the parole officer, in consultation with a senior parole officer may issue a warrant for the parolee's arrest. N.Y. Exec. Law section 259-i(3)(a)(i). The warrant may be executed, -i.e., the parolee may be arrested, by any parole officer, police officer, or any other officer authorized to serve criminal process. Id. § 259-i(3)(a)(ii). As described above, within three days of the execution of a parole warrant, the alleged violator must be given a Notice of Violation advising him of the time, place and purpose of a preliminary hearing, as well as the violations charged and certain rights to which he is entitled at the preliminary hearing. Id. § 259-i(3)(c)(3). The parolee is entitled to a preliminary hearing within fifteen days to determine whether

probable cause exists to believe the parolee has violated one or more of his parole conditions in an important respect.  Id. § 259-i(3)(c)(iii)-(iv).

If the hearing officer determines that no probable cause exists to believe the parolee violated his conditions of parole, he is immediately released and restored to parole supervision.  Id. § 259-i(3)(c)(vii).  If the hearing officer determines that probable cause exist to believe that the parolee violated the parole conditions, he remains in detention and a final revocation hearing must then be scheduled within ninety days of such determination.  Id. § 259-i(3)(f)(i).

The Division of Parole may also declare a parolee to be "delinquent" upon the occurrence of one of the following: (1) the parolee has waived the preliminary hearing; (2) a finding of probable cause at the preliminary hearing; (3) a finding by a member or supervising parole officer that there is reasonable cause to believe the parolee has absconded from supervision; or (4) a finding that the parolee has been convicted of a new crime while under his present parole.  N.Y. Comp. Codes R. & Regs. tit. 9, § 8004.3.  The effect of a declaration of delinquency is set forth in N.Y. Penal Law § 70.40, which provides that "the declaration of delinquency shall interrupt the person's sentence as of the date of the delinquency and such interruption shall continue until the return of the person to an institution under the jurisdiction of the state department of correctional services."  Id.  Where a sentence has been interrupted by a declaration of delinquency, the term of the

defendant's sentence is then extended, beyond the original maximum expiration date, for a period of time equal to the interruption period.  See Tineo v. N.Y. State Div. of Parole, 14 A.D.3d 949 (N.Y. App. Div. 3d Dep't 2005).  However, if at the subsequent final revocation hearing, the charges that lead to the declaration of delinquency are dismissed, the delinquency is "canceled," –i.e., the original maximum expiration date is reinstated.  N.Y. Exec. Law § 259-i(3)(f)(ix).

The Parties' Claims

Parker is proceeding pro se and his submissions are not entirely clear about what he is claiming and about the basis for such claims.  However, the essence of his case is that he was detained for parole violations for five days after the police stop of April 21, 2003, and after the police stop of May 23, 2003, he was detained until July 7, 2003, and that these detentions occurred without compliance with the New York state procedures and were therefore in violation of his United States constitutional rights.  His claims must be presumed to arise under 42 U.S.C. § 1983.  Chin and Friedman assert various defenses, including the contention that they were not personally involved in any procedural or constitutional violations.

**DISCUSSION**

Anybody who is deprived of liberty or property by a state actor is entitled to due process.  U.S. Const. amend. XIV.  Generally due process entails notice and a right to be heard prior to the deprivation of liberty or

property, or a meaningful post-deprivation opportunity to challenge the deprivation. Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996). Whether the opportunity to challenge the deprivation needs to be before or after the deprivation depends on whether the deprivation was part of an "established state procedure" or based on a "random, unauthorized act." Id. In Hellenic, the Second Circuit held that in claims based on "random, unauthorized" acts, "the Due Process Clause . . . is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy." Id.

The right to due process extends to parolees facing parole revocation. McDay v. Travis, 303 Fed. Appx. 928, 930 (2d Cir. 2008) (holding that under the Due Process Clause, parolees facing revocation are "entitled to a preliminary hearing and a revocation hearing."). The Second Circuit has held that a parolee has a constitutional due process claim when he is detained beyond his maximum detention date without a final revocation hearing. Calhoun v. New York State Div. of Parole Officers, 999 F.2d 647, 653 (2d Cir. 1993) ("The state may not extend a prisoner's sentence based on a claimed parole violation, without providing him [a] final due process hearing.").

There surely is an issue in the present case as to whether due process was accorded to Parker in connection with his arrests for parole violations and his detentions. However, this was not a case where there

was an extension of parole or detention without any reason.  The undisputed facts show that Parker committed serious parole violations, including absconding for a period of about four months from January to April 2003.  The resolution of this case, including consideration of all the circumstances, cannot be made on the present record.

## CONCLUSION

For the foregoing reasons, all motions are denied.

This opinion resolves the motions listed as numbers 38, 39, 40, 43, and 49 on the docket.

Dated: New York, New York
       March 28, 2012

*Thomas P. Griesa*
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/12