UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-29-16
```

---

GILBERT PARKER,

                Plaintiff,

       v.

NEW YORK STATE DIVISION OF
PAROLE, et al.,

               Defendants.

---

04-cv-3901 (TPG)

**OPINION**

 

 

*Pro se* plaintiff Gilbert Parker brings this action under 42 U.S.C. § 1983, alleging that he was unlawfully detained on a parole warrant. Plaintiff has moved for summary judgment against defendants Alice Chin and Ronald Friedman, who, in turn, have cross-moved for summary judgment. For the reasons that follow, the court denies plaintiff's motion for summary judgment and grants defendants Chin and Friedman's cross-motion for summary judgment.

In addition, plaintiff has moved for default judgment against defendants John Cieslak Jr. and Angela Dibenedetto. Because Cieslak and Dibenedetto have not been properly served, the court denies plaintiff's motion for default judgment.

**Facts**

The facts set forth below are taken from various official records, declarations submitted by the parties, and transcripts from the depositions of Parker, Chin, and Friedman.

Plaintiff was convicted of third-degree attempted burglary in New York state court.  On June 26, 2000, he was sentenced to a minimum of one year and six months and a maximum of three years in prison.  He began serving his sentence on July 18, 2000.  On December 5, 2001, plaintiff was released to parole supervision.  A week later, he absconded to Georgia, in violation of the terms of his parole.  He was arrested in Georgia on June 1, 2002, and extradited to New York for a parole revocation hearing.   Following the hearing, plaintiff was declared delinquent and sentenced to four months in prison for absconding to Georgia.

On October 16, 2002, plaintiff was again released to parole supervision to complete as a parolee the remainder of his sentence for his underlying offense.  At the time of his release, plaintiff's maximum expiration date—that is, the date on which his sentence, and thus his parole supervision, was to end—was April 3, 2003.  Upon plaintiff's release, he was supervised by Parole Officer Alice Chin, and her immediate supervisor, Senior Parole Officer Ronald Friedman, both defendants in this case.

What followed was a series of five parole violations that resulted in plaintiff being declared delinquent.  First, on January 2, 2003, plaintiff left his approved residence without Chin's knowledge or authorization.  Then, on January 12, 2003, plaintiff was arrested for drinking a bottle of beer on a subway train and charged with disorderly conduct and resisting arrest.  Plaintiff pleaded guilty to those charges, and committed yet another violation by failing to notify Chin of the arrest.  Fourth, on January 23, 2003, plaintiff missed a scheduled meeting with Chin.  Finally, the following day, plaintiff did not attend his mandatory drug treatment program.

Because plaintiff had again absconded, Chin and Friedman issued a parole warrant for plaintiff's arrest on January 30, 2003.  Plaintiff was also declared delinquent as of January 2, 2003, the date of the first of the January violations.  Upon being declared delinquent, plaintiff ceased being credited for time he owed on his prison sentence—that is, the running of his sentence was suspended.  Thus, the three months and one day that he owed on his sentence as of January 2 was tolled until he either reported to parole or was otherwise in parole custody.

Effective March 20, 2003, plaintiff's case was transferred to a special unit within parole that searches for absconders.  Senior Parole Officer Angela Dibenedetto and Parole Officer John Cieslak Jr. of the Absconder Search Unit took over the case and the responsibility for

enforcing the warrant.  After this transfer, Chin and Friedman were no longer involved in plaintiff's case.

On April 21, 2003, plaintiff was stopped by a New York City Police Department ("NYPD") officer for possessing an open container of beer in a public place.  According to plaintiff, the officer told plaintiff, "If you do not have any outstanding warrants, then I'm going to issue you a summons and you can go."  The officer then ran plaintiff's name through the NYPD computer system, which alerted the officer to plaintiff's outstanding parole warrant.  Plaintiff was then detained by the NYPD and held at Bronx Central Booking for five days.  Despite the officer's mention of "outstanding warrants," the parole warrant was not executed at this time.

Upon his release, plaintiff states that he attempted to contact Chin about his April detention.  According to plaintiff, he left numerous voice messages on her phone, but his calls were never returned.  Chin and Friedman deny having received any calls from plaintiff, and state that they never received notice of plaintiff's April detention from plaintiff, the NYPD, or anyone else.  Plaintiff also admits that he never went to see either Chin or Friedman in person.

On May 23, 2003, plaintiff was again stopped by an NYPD officer for possessing an open container of beer in a public place.  Like the officer who arrested plaintiff a month earlier in April, this officer told plaintiff that, if plaintiff had no outstanding warrants, he would be

issued a summons and would be free to leave. The officer then conducted a name check on the NYPD computer system, which turned up the same parole warrant that had been issued by Chin and Friedman. Plaintiff was again detained, but this time he was arraigned on the parole warrant.

On May 29, 2003, six days after his arrest, plaintiff was charged with violating the terms of his parole through a Notice of Violation. The Notice of Violation advised plaintiff that a preliminary hearing would be held on June 6, 2003, to determine whether probable cause existed for the charged parole violations. Then, if probable cause was found to exist, a final revocation hearing would be held on June 20, 2003. Because plaintiff still owed three months and one day on his sentence (the time remaining on his sentence as of the date he was declared delinquent, January 2, 2003), his estimated maximum expiration date was August 30, 2003.

Under New York law, however, plaintiff was entitled to receive notice regarding a parole violation hearing within *three* days of his arrest. Thus, the Notice of Violation that he received, *six* days after his arrest, was untimely. Plaintiff was still in custody on June 17, 2003, when he filed a habeas petition in New York State Supreme Court. Parole conceded that plaintiff had not received timely notice of a preliminary hearing within three days of his arrest as required under New York

Executive Law § 259-I, and did not oppose the habeas petition.  Plaintiff was released from custody in early July 2003.

In addition, the parole warrant holding plaintiff was vacated, which expunged the otherwise valid delinquency which had been imposed on plaintiff on January 2, 2003.  Plaintiff's sentence was thus recalculated retroactively as if plaintiff had not absconded, and the maximum expiration date reverted back to his earlier-calculated release date of April 3, 2003.

*Procedural History*

On May 24, 2004, plaintiff filed a complaint in this action.  Plaintiff amended his complaint on July 1, 2004.  On July 28, 2005, defendants filed a motion to dismiss, which the court denied as to Chin and Friedman.   On May 7, 2010, plaintiff filed a motion for summary judgment, which the court denied.  On October 26, 2010, plaintiff filed a second motion for summary judgment, which the court again denied. Plaintiff filed a third motion for summary judgment on August 15, 2011, and defendants cross-moved for summary judgment on January 9, 2012. The court denied both motions.

Plaintiff amended his complaint for a second time on December 3, 2013, and then a third time on August 14, 2014.  The third amended complaint named Parole Officers John Cieslak Jr. and Angela Dibenedetto as defendants for the first time.  Plaintiff attempted to serve Cieslak and Dibenedetto by leaving a summons and complaint at the

6

Office of the Attorney General.   On April 20, 2015, plaintiff moved for default judgment against Cieslak and Dibenedetto.

On August 15, 2014, plaintiff moved for summary judgment for the fourth time.   While the court initially denied that motion, at a conference on September 18, 2015, the court permitted plaintiff to renew that motion for summary judgment against defendants Chin and Friedman. Defendants cross-moved for summary judgment on November 6, 2015.

**Discussion**

## 1. Summary Judgment Is Granted in Favor Of Defendants Chin and Friedman.

To prevail on a motion for summary judgment, the movant must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the court must view all facts "in the light most favorable" to the non-moving party.   *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby*

*Inc.*, 477 U.S. 242, 248 (1986).   In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

In cases that involve a *pro se* party, the court must construe his submissions liberally to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted).   However, this standard "does not relieve [a *pro se* party] of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

To prevail on a § 1983 claim, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law.   *West v. Atkins*, 487 U.S. 42, 48 (1988).   In addition, a plaintiff must show defendants' personal involvement in the claimed violation of his rights.   *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). To establish personal involvement, a plaintiff must show that there was "personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal." *Id.* at 155.

The Second Circuit outlined a framework for assessing personal involvement in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Personal involvement may be found where: (1) the defendant participated directly in the constitutional violation, (2) the defendant, after being informed of the violation, failed to remedy the violation, (3) the defendant created or allowed to continue a policy or custom under which the violation occurred, (4) the defendant was grossly negligent in supervising subordinates who committed the violation, or (5) the defendant exhibited deliberate indifference to the violation by failing to act on information indicating that the violation was occurring. *Id.* The Second Circuit has noted that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), may have heightened the requirements for showing personal involvement. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

In addition, public officials may be protected from § 1983 liability under the doctrine of qualified immunity. Public officials are immune from civil liability for actions taken in their official capacity if those actions were objectively reasonable in light of clearly established law. *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 158 (2d Cir. 2005).

Here, plaintiff fails to demonstrate the personal involvement of Chin or Friedman. Further, even if plaintiff could show Chin and Friedman's personal involvement, Chin and Friedman would be entitled to qualified immunity.

Chin and Friedman had no personal involvement in plaintiff's detentions in April 2003 and May 2003.   Chin and Friedman had transferred plaintiff's case as of March 2003, *before* either detention. And in March 2003, plaintiff's warrant was indisputably valid.   Even had plaintiff not absconded in January 2003, the maximum expiration date for his sentence would still have been April 3, 2003, *after* the case was transferred out of the hands of Chin and Friedman.

Though not made clear in his papers, plaintiff appears to fault Chin and Friedman for his detention in May 2003 due to their failure to cancel the parole warrant after plaintiff's detention in April 2003.   Two possible theories of liability flow from this argument.   Under one possible theory, the parole warrant was essentially "used up" when plaintiff was arrested in April 2003 because the NYPD officer detained plaintiff only after discovering the outstanding warrant.   Plaintiff claims he left messages for Chin informing her of his April 2003 detention.   According to plaintiff, Chin should have canceled the warrant upon learning of his April detention because the warrant had been used already.   Had Chin canceled the warrant in April, plaintiff would have avoided detention in May.

Under a second theory, *both* of plaintiff's detentions were unlawful because they occurred after his recalculated maximum expiration date of April 3, 2003.   After plaintiff's successful habeas petition, the parole warrant was expunged and plaintiff's maximum expiration date reverted

back to April 3, 2003, as if the January 2003 violations had never occurred.   Plaintiff might be suggesting that when his maximum expiration date reverted back to April 3, 2003, this retroactively rendered both detentions illegal because they occurred after that date of April 3, 2003.  Under this theory, Chin could be liable for the second detention in May, because after being informed of the first unlawful detention in April, she should have canceled the warrant and prevented the second unlawful detention in May.

Neither of plaintiff's possible theories has merit, as Chin and Friedman are entitled to qualified immunity.   Specifically, Chin and Friedman are immune from liability if their actions were objectively reasonable in light of clearly established law.  *Morris-Hayes*, 423 F.3d at 158.  It is well established that upon being declared delinquent, a parolee stops being credited for time he owes on his prison sentence and his maximum expiration date is extended for a time equal to his delinquency.   N.Y. Penal Law § 70.40; *see Tineo v. N.Y. State Div. of Parole*, 14 A.D.3d 949, 950 (2005).

Regarding plaintiff's first theory, while plaintiff does allege that the officer told plaintiff that the officer would let plaintiff go if plaintiff had no outstanding warrants, it is undisputed that the parole warrant was not in fact executed in connection with the April detention.   The parole revocation process was never initiated, no parole hearing was held, and plaintiff was released after only five days.  Moreover, the NYPD never

gave Chin and Friedman notice of plaintiff's April detention. Even if the court assumes that Chin learned of plaintiff's April detention through plaintiff's messages, that does not alter the fact that the parole warrant was never executed. Chin therefore could reasonably have assumed that plaintiff's April detention relied not on the outstanding parole warrant, but rather on plaintiff's possession of an open container of beer in a public place. Under these circumstances, it was objectively reasonable for Chin or Friedman to not cancel the warrant. Chin and Friedman are entitled to qualified immunity.

Regarding plaintiff's second possible theory, even assuming, *arguendo*, that both of plaintiff's detentions were unlawful, Chin and Friedman's actions were objectively reasonable in light of the law of delinquency. As described above, after plaintiff's detention in April, the warrant remained extant. And because plaintiff had absconded, Chin and Friedman reasonably believed, as of April 2003, that plaintiff still owed three months and one day on his sentence. It was only in July 2003 that plaintiff's maximum expiration date was retroactively recalculated to a date prior to his arrests and detentions. Therefore, in April 2003, there would have been no reason for Chin and Friedman to cancel the warrant. Again, Chin and Friedman are entitled to qualified immunity as their actions were objectively reasonable and they did not knowingly violate the law.

Because Chin and Friedman were not personally involved in plaintiff's detentions, and because they are entitled to qualified immunity in any event, summary judgment is granted in favor of Chin and Friedman.

## 2. Plaintiff's Motion for Default Judgment Against Defendants Cieslak and Dibenedetto Is Denied.

Plaintiff also moves for default judgment against defendants Cieslak and Dibenedetto. Neither of these defendants has been properly served. Plaintiff attempted to serve Cieslak and Dibenedetto by leaving a summons and complaint at the Office of the Attorney General. However, this is not sufficient service, as the Attorney General is not authorized to accept service of papers on current or former state employees. The Office of the Attorney General did inform plaintiff of the addresses for Cieslak and Dibenedetto, but as of yet, plaintiff has not served either Cieslak or Dibenedetto. Thus, plaintiff's motion for default judgment against Cieslak and Dibenedetto is denied.

## Conclusion

The court denies plaintiff's motion for summary judgment and grants defendants Chin and Friedman's cross-motion for summary judgment. In addition, the court denies plaintiff's motion for default judgment against defendants Cieslak and Dibenedetto. This opinion resolves all outstanding motions in this case.


SO ORDERED.

Dated:  New York, New York
       March 29, 2016

_____
Thomas P. Griesa
U.S. District Judge

14